# SAMUEL & STEIN

### ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | December 6, 2018 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Barbara C. Moses, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:    <u>*Galeana, et al. v. El Taquitos Corp., et al.*</u>
              *Docket No. 18-cv-2950 (BCM)*

Dear Magistrate Judge Moses:

      We represent plaintiffs Gabriela Galeana and Nicolas Galeana[1] in the above-captioned matter and submit this letter to the Court with the consent of Lauriano Guzman, Esq., counsel for defendants, in accordance with the Court's Order of November 21, 2018,, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

      Plaintiffs filed their complaint in this matter on April 3, 2018. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for minimum wage and overtime violations, as well as claims solely under the New York Labor Law for failure to pay "spread of hours" pay and failure to provide wage notices and failure to provide wage statements.

      Specifically, plaintiffs alleged that they were employed by defendants at their taco trucks (and, in the case of Mr. Galeana, also partly at their restaurant) for roughly four years each, ending in January 2018. Ms. Galeana was employed primarily as a food preparer and cook; Mr. Galeana was originally employed as a delivery person, but later also as a food preparer and cook. Ms.

---

[1] In the caption of the lawsuit, he is identified as N.G.; he was a minor at the time the lawsuit was filed. He turned 18 in September 2018, so we now identify him by his full name.

Galeana alleged that she five or six days per week (depending on the timeframe) from 12 to 13½ hours per day, for a total of either 67½ or 72 hours per week. Mr. Galeana alleged that he worked six days per week – initially only seven hours per day, but later 10½ - 11 hours per day, for a total of either 42 or 64½ hours per week.

Plaintiffs were not, however, paid hourly rates at least equal to the minimum wage. Instead, they were paid flat day rates – rates that did not vary based on the number of hours they worked in a day or days that they worked in a week. Ms. Galeana was paid $80 per day throughout her employment; Mr. Galeana started at $25 per day, got a raise to $30 per day, and then received a raise to $80 per day (subsequently raised to $100 per day). And although Mr. Galeana did receive tips during the time period when he was making deliveries, defendants never informed him, as required, of the provisions of the tip credit law, making them ineligible to claim the benefit of the tip credit.

Plaintiffs were paid in cash with no paystubs throughout their employment. Moreover, they did not receive the wage notices required by the Wage Theft Prevention Act.

Based on these facts, plaintiffs calculated their estimated damages as follows, if they prevailed at trial on *all* of their claims: for Ms. Galeana, $215,000 in actual and liquidated minimum wage and overtime damages under the NYLL, $20,000 for failure to pay spread of hours pay, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or paystubs, for a total of $245,000; for Mr. Galeana, $109,000 in actual and liquidated minimum wage and overtime damages under the NYLL, $7,500 for failure to pay spread of hours pay, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or paystubs, for a total of $126,500. In other words, plaintiffs would have collectively been owed about $371,000. Of that substantial figure, however, only $98,000 in actual and liquidated damages would have been recoverable under the Fair Labor Standards Act – $53,000 for Ms. Galeana, and $45,000 for Mr. Galeana.[2]

Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $90,000. While the final settlement amount is significantly less than plaintiffs' maximum possible recovery, we believe this to be a fair resolution to this matter, due in small part to *bona fide* disputes about the value of their claims and in large part due to the risks attendant with continuing the litigation.

---

[2] This discrepancy in monies recoverable under the FLSA vs. NYLL stems from the shorter statute of limitations under the FLSA and the fact that the NYLL's Hospitality Wage Order provides that when an employee is paid a salary (rather than an hourly rate), the employee's salary is deemed to cover only the first 40 hours of the employee's work; he is then entitled to time-and-a-half the effective overtime rate for all overtime hours, rather than just a 50% half-time premium.

Defendants strongly disputed plaintiffs' claims about their work histories. Defendants claimed that plaintiffs worked many few hours than they claimed – and in particular, that Nicolas Galeana would have been in school for much of the time he claimed to have been working. Of course, neither plaintiffs nor defendants had any records of any sort reflecting either compensation or work hours. To be sure, plaintiffs' testimony as to their employment could have been sufficient under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). Nevertheless, this would have set up a factual dispute that could not have been resolved via motion practice, and would have required a trial at which the parties' relative credibility would have been tested.

Moreover, defendants strongly disputed that they met the $500,000 revenue threshold for enterprise coverage under the Fair Labor Standards Act; defendants' records reflected purported revenues of only about half that level. Because defendants ran a cash business, plaintiffs were prepared to challenge those documents as unreliable; nevertheless, that would have been yet another hurdle for plaintiffs to overcome, and plaintiffs' failure to do so could have resulted in them being required to restart the litigation from square one in state court.

At the end of the day, however, the risks in this case were not primarily factual, but rather practical: plaintiffs would have had a difficult time collecting more money if they won a larger judgment at trial. Defendants operated (as noted above) a largely cash business, and we had not identified any assets for the individual defendants. (All of the hard assets of the business were leased.) As a result, the large figure that plaintiffs had calculated they were owed was effectively illusory; they had no prospects of actually recovering it regardless of their ultimate success on the merits.

By agreeing to settle at this juncture, plaintiffs were able to gain a significant recovery for themselves, while saving expenditures for depositions and trial, and without the delay of waiting for trial or the risks attendant with trial. And because collectability is a concern, litigation delays – not to mention costs incurred by defendants in defending themselves – could have significantly impaired their ability to recover more money, regardless of their success at trial. And although this settlement agreement calls for installment payments, the payout period is relatively short – only six months – and plaintiffs are protected by a confession of judgment for 200% of the settlement amount. Thus, plaintiffs decided to accept defendants' offer.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant";

(2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiffs suggest that they weigh in favor of settlement approval. Plaintiffs will be receiving all of their actual federal damages, and the total settlement is almost 95% of their actual *and* liquidated federal damages. While it is only 25% of their maximum possible federal and state actual and liquidated damages, it is appropriate given the risks (particularly collectibility) described above. Settlements in that range are frequently approved even without special circumstances. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable). And settlements which involve much lower percentages of potential recovery are approved when the specific risks of the case dictate their appropriateness. *See, e.g., Penafiel v. Babad Management Co., LLC,* 2018 WL 1918613, at *2 (S.D.N.Y. Apr. 19, 2018)(recovery of 15% of total damages reasonable given risks posed by defendants' evidence); *Abreu v. Glenda Food Corp.*, 2018 WL 2388532, at *2 (S.D.N.Y. May 25, 2018)(recovery of 13% of total damages reasonable given defendants' strong defenses and possible exempt status of plaintiff).

The settlement will also enable the parties to avoid the delay, burdens and expenses of further discovery and trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-

length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiffs are experienced wage-and-hour litigators, and in consultation with plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $724.50 (filing fee, service of process, interpreters' fees, and subway)[3] and will retain 1/3 of the net settlement (i.e., an additional $29,758.50) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, \*21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at \*5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at \*3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 1.65 times our lodestar, a figure well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at \*2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

---

[3] The Court can take judicial notice of the filing fee; receipts for service of process and the interpreter are attached as Exhibit C.

| Attorney | Class | Rate[4] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 21.50 | $8,180.00 |
| David Nieporent | Senior Associate | $325 | 30.40 | $9,880.00 |
| **TOTAL** | | | **51.90** | **$18,060.00** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018). And in the Eastern District, where the rates are a bit lower, we were recently awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

---

[4] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and travel time was billed at half the regular rate.

      For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                        Very truly yours,

                                        David Stein

Enc.

cc: Lauriano Guzman, Esq. (via ECF)